UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY LESTER,

        Plaintiff,

v.                                                  Case No. 1:20-cv-644

                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for supplement security income (SSI).

On July 15, 2016, plaintiff protectively filed an application for SSI alleging a disability onset date of October 1, 2009. PageID.52. Plaintiff's application listed a number of conditions which affected his ability to work including: failure of laminectomy/discectomy with radiculitis; cervical fractures C1-5 and C7; loss of hearing left ear; blurry vision; diminished grip strength in upper extremities; lumbar radiculopathy; lumbar post-laminectomy syndrome; lumbar degenerative disc disease; "serious medical impairment of lower back;" numbness in left hand; carpal tunnel in both hands; rectal bleeding; restless leg syndrome; and attention deficit disorder (ADD) . PageID.234. Prior to applying for SSI, plaintiff completed the 11th grade and had past relevant work as a transmission mechanic. PageID.60, 235-236. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on

January 30, 2019. PageID.52-61. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.   LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of July 15, 2016. PageID.54. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease, status-post cervical spine fractures and status-post lumbar discectomy; affective disorder; unspecified neurocognitive disorder; cannabis abuse disorder; somatic symptom disorder; attention deficit hyperactivity disorder (ADHD); hearing loss; restless leg syndrome; and carpal tunnel syndrome. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.55.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for occasional climbing of ramps and stairs; no climbing ladders, ropes, and scaffolds; occasional balancing with the assistance of hand held assistive device; occasional stooping, kneeling, crouching, and crawling; frequent handling bilaterally; frequent exposure to extreme cold and vibration; occasional exposure to noise; no exposure to hazardous moving machinery and unprotected heights; will require the use of a handheld assistive device at all times while standing and where the contralateral upper extremity can be used to lift and carry objects up to exertional limits previously specified; limited to receiving, comprehending, and executing simple, routine tasks; and can have occasional contact with the public, co-workers, and supervision.

PageID.56. The ALJ also found that plaintiff is unable to perform his past relevant work as a transmission mechanic. PageID.59-60.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.60-61. Specifically, the ALJ

found that plaintiff could perform the requirements of unskilled, sedentary work in the national economy such as packager (20,000 jobs), assembler (28,000 jobs), and addresser (140,000 jobs). PageID.60-61.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since July 15, 2016 (the date the application was filed) through March 27, 2019 (the date of the decision).  PageID.61.

### III. DISCUSSION

Plaintiff raises two errors on appeal.

**A. The ALJ's Decision on Plaintiff's Residual Functional Capacity (RFC) is not supported by substantial evidence.**

>  **1. The ALJ violated SSR 96-8p when he failed to include all the effects of claimant's physical and mental impairments when determining claimant's RFC.**
>
>  **2. The ALJ failed to properly consider claimant's pain and other symptoms as required by 20 C.F.R. §416.929 and SSR 16-3p.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. § 416.945.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. § 416.920(e).

### a.    **Physical impairments**

Here, the ALJ noted plaintiff's history of back injuries:

> The record showed the claimant injured his back in 2009, after which he underwent a lumbar discectomy. He was subsequently driving an ATV in 2014 and

5

>had an accident in which he fractured two cervical vertebrae (Ex 19F/56 and 65). He was less than cooperative with subsequent physical therapy (Ex 11F/1). Yet he reported pain and discomfort in his neck during the period at issue.

PageID.57.  The ALJ also noted plaintiff's claim of limited mobility and disabling pain arising from these incidents:

>The claimant testified he has used a cane since his initial back injury in 2009. He indicated he stopped driving about three months prior to the hearing because of his physical impairments. He also endorsed suffering from excruciating pain even during the hearing. He stated he could stand and/or walk 15 to 20 minutes before having to sit or lie down. Difficulty related to concentrating and memory were reported. Overall, he offered he was constantly in pain.

PageID.56-57.

Plaintiff contends that he is much more limited than the restrictions set forth in the RFC determination due to pain.  At his hearing, plaintiff estimated that he could sit about 15 minutes, and further testified that sitting for long periods of time causes excruciating back pain, that his most comfortable position is lying on his stomach, and that he spends about six hours a day lying down because of pain.  PageID.85-87, 90.  Plaintiff contends that the RFC does not reflect pain related to carpal tunnel syndrome, the radicular pain from his neck and shoulders, and that the pain extends through his fingertips.  In this regard, plaintiff testified: that he must cut wood to heat his house but he cannot hold a saw; that he cannot pick up coins repeatedly; that his hands go numb if he reaches out in front of himself; and, that lifting his hands above his head causes a pins and needles sensation that can take hours to go away.  PageID.81-2, 88-90.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone.  Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir. 1987). "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints

6

of disabling pain." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007), citing 20 C.F.R. § 416.929(a).

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id*. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id*.

*Id*.

In evaluating plaintiff's claim, the ALJ reviewed medical records to determine plaintiff's underlying medical conditions:

> It is worth noting that in spite of [the claimant's] complaints of constant, severe pain, such as that to which he testified, the most recent radiographs of record showed only mild degenerative changes in both the cervical and lumbar spine (Ex 2F/29 and 18F/5). Consistent these limited findings, a number of treatment notes through the end of 2016 showed the claimant did well with lumbar injections and that he had a normal gait and normal physical examination findings of the neck and lower back (Ex 4F/14-15 and 19; 13F/1; 17F/25).
>
> It was not until January 2017 that significant positive findings related to the neck and back appeared during the period at issue in this decision. Physical examination found decreased range of motion of the spine. Although the claimant stated he used a cane, this was only on an as needed basis and the last time he used the device was about one week prior to the consultative examination. The claimant presented to the exam without a cane, but displayed a mild limp.  Decreased bilateral grip strength was noted. Some complaints of pain when heel walking were identified, but he was otherwise able to walk on his toes and perform tandem walk without difficulty (Ex 7F).

PageID.57.

After the administrative hearing on December 4, 2018, additional medical evidence indicated that plaintiff required the use of a cane:

7

> A recent consultative examination from January 2019 identified decreased range of motion of both the cervical and lumbar spine. It also showed the claimant had a moderate limp, but was able to walk with a steady gait with a cane (Ex 23F). These findings were similar to those from a treatment note a few months earlier (Ex 17F/4). Incidentally, and supporting the reported need for a cane, another January 2019 examination documented the claimant's presentation with a cane (Ex 22F).
>
> The 2019 physical consultative examination also showed the claimant could walk on his heels and toes, but only with the use of the cane. Similarly, although he could perform a tandem walk, this also required his use of a cane. The claimant admitted he could climb steps only with the assistance of the handrail (Ex 23F). This consultative examination report indicates the need for the use of a cane and an overall reduction to the sedentary exertional level.

*Id*.

The ALJ also noted that plaintiff's EMG results were positive for bilateral carpal tunnel syndrome. *Id*. However, plaintiff received no substantive treatment for his wrists other than wrist braces "that he supposed to wear, but admittedly did not do so often." PageID.57-58. Nevertheless, the ALJ concluded that "the EMG results documented in the record support at least some limitation in his ability to handle with bilateral upper extremities." PageID.58. In addition, the ALJ concluded that plaintiff's RFC is supported by the medical opinions discussed and "by the claimant's history of spine problems, hearing loss, carpal tunnel syndrome, ect. [sic], and his use of a cane." PageID.59.

The ALJ's decision took account of plaintiff's physical limitations arising from his history, including his need to use a cane to ambulate and plaintiff's claim that he is in constant pain from his injuries. ALJ noted that the extent of plaintiff's treatment consisted of lumbar injections. PageID.57. While plaintiff states that he was prescribed morphine, *see* Plaintiff's Brief (ECF No. 17, PageID.1177), the records reflect that his last prescription for morphine was in May 2012 (PageID.339), four years before plaintiff applied for SSI.

While the ALJ did not explicitly address plaintiff's daily activities at step four, he referred to those activities throughout the decision.  At step three, the ALJ noted some of those activities:

> [T]he claimant performed some mechanic work on his car and a tractor, shopped in stores, drove, prepared simple meals, cared for his daughter, helped his wife whom was injured and wheelchair-bound, performed household chores, shopped in stores, and helped his daughter with her homework (Ex 4E, 5F, 14F, 19F, 22F, and Hearing Testimony).

PageID.55.  Plaintiff also engaged in other activity such as using a chainsaw.  PageID.58.

"It is the Commissioner' function to resolve conflicts in the evidence." *Mixon v. Colvin*, 12 F. Supp. 3d 1052, 1064 (S.D. Ohio 2013), citing *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 928 (6th Cir.1987).  Here, the ALJ performed that function when he reviewed the evidence and concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged physical symptoms are not entirely consistent with the medical evidence.  *See* PageID.57.  Accordingly, plaintiff's claim that the ALJ erred with respect to evaluating his disabling pain and physical impairments is denied.

**b.    Mental impairments**

Plaintiff contends that the ALJ failed to properly address his mental impairments. After learning that plaintiff injured himself using a chainsaw inside of his house[1], the ALJ considered the presence of cognitive functioning problems and sent him for another psychological consultation after the hearing.  PageID.58. The ALJ summarized the psychologist's opinion, which indicated that plaintiff could perform simple tasks:

---

[1] *See* Emergency Room Report (PageID.876):

"37-year-old male who has left foot pain.  The pain is sharp and is continuous since his incident with the chainsaw.  Does not radiate and it is a 8/10.  So the patient was in his house cutting wood with a chain saw with only socks on and the chain saw kicked and hit his left foot and lacerated the top of his foot at the big toe."

9

> Michael Brady, Ph.D., a psychological consultative examiner, opined the claimant's ability to relate and interact with others, including coworkers and supervisors, was good. The claimant's ability to understand, recall, and complete tasks and expectations was significantly impaired because of his memory issues. The doctor offered the claimant appeared capable of performing simple tasks without much limitation. His ability to maintain concentration was fair, and he seemed capable of dealing appropriately with normal workplace stressors (Ex 22F). I give Dr. Brady's assessment great weight. This opinion is consistent with Dr. Brady's mental status examination findings and his objective testing of the claimant showing memory deficits.

PageID.59. In this regard, Dr. Brady concluded that the results of plaintiff's mental status examination revealed abnormalities in memory, abstract reasoning, and calculation tasks. PageID.1156. While Dr. Brady found that plaintiff's "ability to understand, recall, and complete tasks and expectations is markedly significantly impaired due to memory impairments," the doctor concluded that "[h]e appears able to perform simple tasks with no major limitations." *Id*.

Upon a review of the record, the Court concludes that the ALJ appropriately reviewed plaintiff's mental impairments. The ALJ's RFC determination accounted for plaintiff's mental impairments by limiting work which involved "receiving, comprehending, and executing simple, routine tasks" with "occasional contact with the public, co-workers, and supervision." PageID.56. The RFC also stated the plaintiff could have "no exposure to hazardous moving machinery." *Id*. Accordingly, plaintiff's claim that the ALJ erred in evaluating his mental impairments is denied.

### B. The ALJ did not give a proper hypothetical to the vocational expert (VE) and the VE testimony failed to establish significant numbers of jobs in the national economy that Plaintiff can perform.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of*

*Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, "[t]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Plaintiff raises three issues. First, plaintiff contends that the VE did not properly address the RFC limitation that he have only "occasional exposure to noise." PageID.56. In response to the second hypothetical question – which included the limitations set forth in the RFC – plaintiff contends that, the VE should have reduced the number of the two factory jobs, packager and assembler. Plaintiff's Brief at PageID.1189-1190; PageID.103-104. Second, plaintiff contends that the ALJ did not properly define the limitation related to noise and it is not clear how the VE interpreted it. Plaintiff's Brief at PageID.1190. Third, plaintiff contends that he cannot perform the assembler job because it requires "constant" reaching and handling, and the VE did not state whether he reduced the number of available positions due to plaintiff's RFC, which was limited to "frequent handling bilaterally" (PageID.56). *Id*.

Plaintiff's claims are without merit. Even if the VE's testimony with respect to the assembler and packager jobs was flawed, the ALJ also found that plaintiff could perform 140,000 jobs as an addresser. PageID.61-62.[2] Plaintiff is not disabled based on this step five finding that other work exists in the national economy that he can perform. Under these circumstances, there is no basis to remand this matter back to the Commissioner to address whether the number of

---

[2] In this regard, the ALJ stated, "The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as packager (559.687-014), with 20,000 jobs; assembler (725.684-018), with 28,000 jobs; addresser (209.587-010), with 140,000 jobs in the national economy." PageID.60-61.

11

assembler and packager jobs should be reduced.  "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507 (6th Cir. 2006), quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  Accordingly, plaintiff's claims of error are denied.

### IV.  CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**.  A judgment consistent with this opinion will be issued forthwith.


Dated: September 28, 2021                                    /s/ Ray Kent
                                                                                    United States Magistrate Judge